**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3220
_____

ALEXANDER RAPHAEL GUZMAN,
                                    Petitioner
                    v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA,
                                    Respondent
_____

On Petition for Review of an Order of
the Board of Immigration Appeals
(Agency No. A075-282-460)
Immigration Judge: Honorable John P. Ellington
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 19, 2019
_____

Before: SHWARTZ, KRAUSE, and BIBAS, *Circuit Judges*.

(Filed: March 29, 2019)
_____

OPINION[*]
_____

_____

[*]This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Petitioner Alexander Guzman seeks review of the Board of Immigration Appeals' (BIA) decision affirming the denial of his request to defer removal under the Convention Against Torture (CAT) and argues, first, that the Immigration Judge incorrectly applied the legal standard for governmental acquiescence and, second, that he was denied due process of law because of ineffective assistance of counsel. For the reasons that follow, we will grant the petition in part, denying relief as to Guzman's CAT claim but remanding to the BIA for further consideration of his ineffective assistance of counsel claim.

## I. Background

Guzman, a citizen and native of the Dominican Republic, was admitted to the United States on a temporary visitor's visa in 1993. He never adjusted his immigration status. In 2015, he pleaded guilty to (1) conspiring to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846 and (2) possession with intent to distribute a controlled substance in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii). He was sentenced to 45 months of incarceration.

Following his conviction, the Department of Homeland Security (DHS) issued a final order of removal, concluding that his convictions constituted aggravated felonies under 8 U.S.C. §§ 1101(a)(43)(B), (U) and 1227(a)(2)(A)(iii). Because an asylum officer determined that Guzman had a reasonable fear of torture in the Dominican Republic, however, DHS referred Guzman's case to an immigration judge (IJ), and Guzman filed

2

an application for deferral of removal under CAT.[1]

At the hearing before the IJ, Guzman testified that two men associated with the Los Zetas drug cartel had threatened to kill him if he returned to the Dominican Republic because he lost their drugs. Specifically, Guzman testified that individuals named Ismael and "El Gordo" agreed to pay him $18,000 to transport 8 kilos of cocaine. While transporting the cocaine, Guzman saw that he was being followed by law enforcement and threw the bag containing the cocaine away. When Guzman arrived home after the trip, he began receiving threatening calls and texts from Ismael and El Gordo who said they would kill him unless he produced the drugs or $340,000. Guzman claimed that individuals also began following and threatening his family, including briefly kidnapping his mother in the Dominican Republic. Finally, Guzman claimed that Ismael and El Gordo told him that they had connections with the government in the Dominican Republic, which they would use to kill Guzman once he landed at the country's airport. Besides his testimony, Guzman offered only a State Department country report from 2015, which the IJ replaced with one from 2016.

Although the IJ found Guzman credible, he denied relief. The IJ determined that it was not more likely than not that Guzman would be tortured with the "acquiescence or willful blindness" of the government of the Dominican Republic because, among other things: (1) there was no evidence of government conduct in this case; (2) any asserted

---

[1] Guzman also sought withholding of removal under 8 U.S.C. § 1231(b)(3)(A), but the IJ ruled that he was not eligible for that relief because he was convicted of a particularly serious crime. Guzman does not challenge that ruling.

3

connections between the drug cartel, Ismael and El Gordo, and the government were "speculative"; (3) although there were reports of corruption in the Dominican Republic, "the government ha[d] taken steps to punish corrupt officials"; (4) there was no evidence that cartel activities were so ubiquitous that Guzman could not relocate to another part of the country; and (5) there was "insufficient evidence of gross, flagrant or mass violations of human rights within the Dominican Republic." A.R. 66–67. In announcing his decision, however, the IJ noted the following:

> In the case at bar the court would note that the [Petitioner] has presented testimony and some background evidence. The court would have found any letters from prosecuting attorneys or agents to be helpful. The court would have found a letter from Willie [a friend] or the [Petitioner's] mother to be helpful. The court would have found a letter from the [Petitioner's] spouse, who is here in court today, to be helpful. And would have expected at least some of this information. The [Petitioner] has chosen to proceed on his exhibits as well as testimony. And the court respects that. However, the court would note that much of the testimony of the [Petitioner] has been wholly uncorroborated.

A.R. 66. Guzman filed an appeal to the BIA, which affirmed the IJ's decision without opinion.

## II.    Discussion[2]

---

[2] We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). Because the basis for removal is Guzman's convictions for aggravated felonies, our jurisdiction is limited to de novo review of "constitutional claims or questions of law." *Pierre v. Att'y Gen.*, 528 F.3d 180, 184 (3d Cir. 2008) (quoting 8 U.S.C. § 1252(a)(2)(D)). Factual or discretionary determinations are outside the scope of our review. *Sukwanputra v. Gonzales*, 434 F.3d 627, 634 (3d Cir. 2006). Where, as here, the BIA affirms an IJ's decision without opinion, we review the IJ's decision as the final agency determination. *Pierre*, 528 F.3d at 184.

4

Guzman makes two arguments on appeal.  First, he argues that the IJ improperly applied the legal standard for deciding the issue of government acquiescence.[3]  Second, he contends that the attorney who represented him at his hearing before the IJ and on appeal to the BIA provided ineffective assistance of counsel, thereby violating his right to due process.  We address each in turn.

## A.    CAT Relief

An applicant for relief under CAT "bears the burden of establishing 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'"  *Sevoian v. Ashcroft*, 290 F.3d 166, 174–75 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)).  For purposes of the regulations, torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."  8 C.F.R. § 208.18(a)(1).

To establish acquiescence, an applicant must demonstrate that "prior to the activity constituting torture, a public official was aware of it and thereafter breached the legal responsibility to intervene and prevent it."  *Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017) (citing 8 C.F.R. § 1208.18(a)(7)).  An applicant can meet this standard by showing either actual knowledge or willful blindness and need not demonstrate knowledge of "specific torturous acts."  *Id.* at 516, 518.  In assessing an applicant's

---

[3] Guzman frames his argument as the IJ's failure "to apply the correct standard for deciding the issue of government 'acquiescence.'"  Petitioner's Br. 4.  Guzman, however, does not actually take issue with the IJ's articulation of the standard (and, indeed, the IJ articulated it correctly) but only with whether the IJ applied the standard correctly.  Our analysis reflects this understanding.

claim, an IJ must consider "all evidence relevant to the possibility of future torture," 8

C.F.R. § 208.16(c)(3), and engage in a two-part analysis: (1) a factual determination of

how public officials would likely respond to the harm the petitioner fears, and (2) a legal

conclusion as to whether that response qualifies as acquiescence. *Myrie*, 855 F.3d at 516.

Here, Guzman argues that the IJ committed legal error by improperly considering

the fact that the Dominican Republic "ha[d] taken steps to punish corrupt officials" in

concluding that he had not established governmental acquiescence.[4] Petitioner's Br. 19;

A.R. 67. While it is true that such a fact does not preclude an applicant for CAT relief

from establishing government acquiescence, *see Pieschacon-Villegas v. Att'y Gen.*, 671

F.3d 303, 312 (3d Cir. 2011); *Myrie*, 855 F.3d at 518, this fact was not the sole basis for

the IJ's conclusion. Indeed, the IJ also found no evidence other than Guzman's

---

[4] The Government argues that we lack jurisdiction to hear this claim because (1) Guzman is actually asking us to review the IJ's factual findings, which we may not do because the basis for removal is a conviction for an aggravated felony, and (2) Guzman failed to exhaust this argument before the BIA. Contrary to the Government's first argument, Guzman is challenging the IJ's application of the pertinent legal standard—a matter over which we have jurisdiction. *See Myrie*, 855 F.3d at 515. We also reject the Government's second argument. While Guzman's brief to the BIA was not a beacon of clarity, we conclude for purposes of jurisdiction that it provided the BIA with sufficient notice that Guzman was challenging the IJ's legal conclusion regarding the government's acquiescence—not simply claiming that the IJ's factual findings were not supported by substantial evidence. *See* A.R. 12–13 ("It is unrealistic for the IJ to require evidence beyond the statements of co-conspirators Ismael and El Gordo of a connection between them, Los Zetas and the Dominican government. . . . The IJ could not reasonably expect a witness to appear in the Immigration Court and admit the corrupt police of the Dominican Republic were in league with the cartel."); *see also Lin v. Att'y Gen.*, 543 F.3d 114, 121 (3d Cir. 2008) ("[S]o long as an immigration petitioner makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted her administrative remedies.") (quoting *Joseph v. Att'y Gen.*, 465 F.3d 123, 126 (3d Cir. 2006)).

uncorroborated testimony that linked the cartel to the government; no evidence to show that, even if there were a link, the problem was widespread; no evidence that the cartel was so ubiquitous that Guzman would not be able to relocate to another part of the country; and insufficient evidence of mass violations of human rights within the Dominican Republic. Thus, even if the IJ incorrectly applied the law by giving weight to the fact that the Dominican Republic had taken steps to address corruption generally, the IJ did not give this fact dispositive weight, *see Pieschacon-Villegas*, 671 F.3d at 311–12, and any error was therefore harmless, *see Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011).

## B. Ineffective Assistance of Counsel

"A claim of ineffective assistance of counsel in removal proceedings is cognizable under the Fifth Amendment—i.e., as a violation of that amendment's guarantee of due process." *Fadiga v. Att'y Gen.*, 488 F.3d 142, 155 (3d Cir. 2007) (citation omitted). To make out an ineffective assistance of counsel (IAC) claim, petitioner must meet two sets of requirements—one procedural and one substantive. *Rranci v. Att'y Gen.*, 540 F.3d 165, 172 (3d Cir. 2008). The procedural requirements include: (1) providing an affidavit attesting to the relevant facts; (2) informing former counsel of the allegations and providing counsel with an opportunity to respond; and (3) stating "whether a complaint has been filed with appropriate disciplinary authorities regarding [the allegedly deficient] representation, and, if not, why not." *Fadiga*, 488 F.3d at 155 (alteration in original) (quoting *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988)). Only then will the BIA consider the IAC claim on the merits, which requires showing that prior counsel's

7

deficient performance prevented the petitioner from reasonably presenting his case and caused him substantial prejudice. *Id.* Substantial prejudice is "a reasonable likelihood that the result would have been different if the error[s] . . . had not occurred." *Id.* at 158–59 (citation omitted).

As with all other claims, we have jurisdiction to review Guzman's IAC claim only if it was exhausted below, 8 U.S.C. § 1252(d)(1), and the Government argues that because Guzman did not present this issue to the BIA, we do not have jurisdiction. But, as made clear in his pro se Notice of Appeal, Guzman *did* raise this issue, *see* A.R. 52 (listing "Ineffectiveness of counsel in the proceedings before IJ" as one of his claims), and the BIA was, therefore, on notice of it, *see Hoxha v. Holder*, 559 F.3d 157, 159 (3d Cir. 2009) ("[T]he identification of an issue in a party's notice of appeal satisfies the statutory requirement of exhaustion provided that the description of that issue in the notice sufficiently apprises the BIA of the basis for the appeal. Failure to address that issue in the brief subsequently filed with the BIA will not deprive us of jurisdiction."). We will not deny Guzman the ability to have his IAC claim heard because the very counsel accused of ineffective assistance unsurprisingly did not pursue it, and we perceive no reason why Guzman could not fulfill the procedural requirements on remand. As for substantial prejudice, the IJ himself observed the many pieces of easily-obtainable evidence, such as the testimony of Guzman's wife and mother, that the original counsel could have but failed to put forth to corroborate Guzman's testimony. The same is true of background materials that could shed light on the relationship between the Los Zetas cartel and the government of the Dominican Republic.

8

As the BIA did not consider this claim, we will remand for its consideration in the first instance. *See I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16–18 (2002); *SEC v. Chenery Corp. (Chenery I)*, 318 U.S. 80, 93–94 (1943).

**III.    Conclusion**

For the foregoing reasons, we will deny the petition as to Guzman's CAT claim but will grant it as to Guzman's IAC claim, remanding to the BIA for proceedings consistent with this opinion.